IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

| | |
|---|---|
| SHANNON TUTTLE<br><br>**Plaintiff,**<br><br>v.<br><br>BAPTIST HEALTH MEDICAL GROUP, INC. D/B/A BAPTIST HEALTH PULMONARY & CRITICAL CARE<br><br>   Serve:  Janet M. Norton<br>                2701 Eastpoint Parkway<br>                Louisville, KY  40223<br><br>**Defendant.** | **CIVIL COMPLAINT**<br><br>JURY TRIAL DEMAND<br><br>Case No: _____<br><br>Judge: |

      Comes the Plaintiff, Shannon Tuttle, by and through the undersigned counsel, and for her complaint against the Defendant, Baptist Health Medical Group, Inc. d/b/a Baptist Health Pulmonary & Critical Care, states as follows:

## INTRODUCTION

      This is an action arising out of a termination violating the Americans with Disabilities Act of 1990. The Plaintiff was terminated by the Defendant as a result of her association with an individual to a disability.  The Plaintiff's son has tested positive for human immunodeficiency virus (HIV).   The Plaintiff's son was involved in an incident in which it was publicly revealed in multiple news sources that he was HIV positive. Despite being an employee of Defendant (or its predecessors) for over 11 years, the Plaintiff was immediately ostracized by many of her fellow employees.  Within 3 months of the news reports' publication, the Plaintiff was falsely accused of engaging in outrageous conduct including "flipping the bird", "mooning", and "mooing" like a cow at

work. The bizarre allegations were absolutely false. After three days of suspension, she was terminated.

## PARTIES

1. The Plaintiff, Shannon Tuttle, is an individual residing in Nicholasville, Jessamine County, Kentucky ("Tuttle" or "Plaintiff").

2. The Defendant, Baptist Health Medical Group, Inc. d/b/a Baptist Health Pulmonary & Critical Care, is a Kentucky non-profit corporation with its principal office and registered agent's office located at 2701 Eastpoint Parkway, Louisville, Kentucky 40223 ("Baptist Health" or "Defendant").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter of the action pursuant to 28 U.S.C. § 1331, by virtue of federal question: 42 U.S.C. §§ 12101 *et seq.* of the Americans with Disabilities Act of 1990 (ADA).

4. This Court has supplemental jurisdiction over Plaintiff's state law claims by authority of 28 U.S.C. § 1367.

5. Plaintiff has complied with the charge procedures required by 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5 prior to filing a complaint under the ADA with this Court.

6. The Plaintiff's Notice of Suit Rights issued by the U.S. Equal Employment Opportunity Commission and dated March 7, 2017 is attached as Exhibit A.

7. Venue lies with this Court pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 12117(a), and 42 U.S.C. § 2000e-5(f)(3) for the following reason: all events giving rise to the Plaintiff's claims in this action occurred in Lexington, Fayette County, Kentucky.

## FACTUAL ALLEGATIONS

8. Baptist Health is a corporation providing medical services to patients in the Commonwealth of Kentucky, including by and through the assumed name Baptist Pulmonary & Critical Care Associates, a medical clinic located at 166 Pasadena Drive, Suite 100, Lexington, Kentucky 40503.

9. The Plaintiff was formerly employed by Baptist Health as a triage coordinator with Baptist Pulmonary & Critical Care Associates.

10. The Plaintiff started work as a triage coordinator with the pulmonary group on August 22, 2005, prior to the purchase of the group by the Defendant.

11. The Plaintiff remained a full-time employee after Baptist Health purchased the medical group on or around July 19, 2010, and remained an employee of Baptist Health until November 16, 2016.

12. The Plaintiff maintained continuous employment status for over 11 years with the pulmonary group.

13. During her employment, Plaintiff received positive employment reviews.

14. In or around August of 2016, the Plaintiff's co-workers became aware that the Plaintiff's son had been diagnosed with HIV.

15. The Plaintiff's son, Dylan, who struggled with addiction, was arrested by the Lexington police.

16. On or around August 22, 2016, WLEX, WKYT, and WTVQ, three (3) local television news channels based in Lexington, Kentucky, aired reports on an incident involving the Plaintiff's son.

17. These news reports disclosed that Plaintiff's son was HIV positive and was accused of biting a corrections officer.

18. The reports suggested that the Plaintiff's son was intentionally attempting to contaminate a prison official with HIV "and other blood pathogens".

19. After the incident and the subsequent news reports, Plaintiff requested three days of personal leave, which she received.

20. As a result of the high-profile event, Plaintiff's fellow employees knew that Plaintiff's son was HIV positive.

21. When Plaintiff returned to work, several co-workers indicated to Plaintiff that they had viewed the news story and that other co-workers in the office were discussing the matter.

22. The Plaintiff was informed by workers that certain co-workers were viewing the news story regarding her son on their personal electronic devices at work.

23. Several of Plaintiff's co-workers began to treat the Plaintiff differently because of their knowledge that Plaintiff's son was HIV positive.

24. These co-workers attempted to avoid contact with the Plaintiff that they had previously engaged in and which was necessary in the performance of the Plaintiff's job duties.

25. One of the Plaintiff's co-workers stated that she would refuse to eat any dish prepared by the Plaintiff for an office potluck.

26. Co-workers refused to hand the Plaintiff work documents, enter the Plaintiff's office, or eat with Plaintiff in the workplace break room.

27. Because co-workers were afraid to have any contact with the Plaintiff, they refused to enter her office to inform her that she had patients in the waiting room.

28. This failure resulted in longer wait times for patients who were scheduled to meet with the Plaintiff.

29. The Plaintiff reported to the office manager that employees were not informing her that patients were in the waiting room for her.

30. The office manager addressed this issue with the staff in or around October of 2016.

31. In or around November of 2016, the Plaintiff was informed that an investigation was ongoing in which individual employee interviews were being conducted.

32. The purpose of the investigation was not disclosed to the Plaintiff during the investigation.

33. The Plaintiff was subsequently interviewed by the Defendant, by and through Shannon Robinson, Specialty Practice Manager, and Amy Morrison, Director of Operations.

34. During the Plaintiff's interview, Ms. Robinson and Ms. Morrison asked the Plaintiff routine office management questions that were not directed in any way at the Plaintiff's conduct.

35. Ms. Robinson and Ms. Morrison informed the Plaintiff that the investigation arose out of an anonymous call to the Defendant's compliance line reporting an undescribed problem with the office.

36. The Plaintiff did not have anything unusual to report about office management, and the interview was concluded after only a few minutes.

37. Soon thereafter on or around November 11, 2016, Ms. Robinson, Ms. Morrison, Lisa Stidham (Defendant's human resources representative), and a security officer met with Plaintiff in her office.

38. In the course of this meeting, the Plaintiff was informed that she was placed on suspension.

39. The Defendant, by and through its multiple representatives, informed the Plaintiff that there would be further investigation into allegations that the Plaintiff was "flipping her middle finger" at co-workers, "mooning" individuals in her workplace, and "mooing" like a cow.

40. The Plaintiff was not given an opportunity to respond to the bizarre accusations of professional misconduct made against her, nor was she informed who had made the complaint.

41. After the Plaintiff's suspension, security guards were stationed in the office by Defendant for four days presumably under the false belief that the Plaintiff represented a threat to the office.

42. Plaintiff was not permitted to return to her workplace.

43. Five days after the suspension, on or around November 16, 2016, the Plaintiff was asked to come to the Defendant's Human Resources office for a meeting.

44. In the course of this meeting, the Plaintiff met with representatives of the Defendant.

45. The Defendant, by and through the representatives, informed the Plaintiff that she was terminated.

46. Plaintiff's termination letter did not cite the alleged professional conduct cited at the time of her suspension.

47. The notice of termination instead referred to an event eleven (11) months prior in which the Plaintiff reviewed her son's medical records at work.

48. Regardless of this event, in or around September, 2016, the Plaintiff had received a positive performance evaluation and a pay raise, suggesting her performance met or exceeded expectations.

49. After her termination, the Plaintiff subsequently submitted a claim for unemployment benefits.

50. In response to the claim for unemployment benefits, the Defendant submitted to the Kentucky Office of Employment and Training a document entitled "Employee Counseling and Corrective Action".

51. The document purported to report an incident from November 15, 2016 and stated as follows:

> Several instances of misconduct on [Plaintiff's] part have been recently discovered. There have been instances of profanity (flipping coworkers off), as well as physical conduct of a sexual nature (mooning/flashing). These behaviors are inappropriate in the workplace and completely unacceptable. Furthermore, they violate Baptist's Sexual and Workplace Harassment Policy.
>
> Shannon was issued a final warning on 1/14/16, which stated that any additional issues in performance would result in termination.
>
> At this time, Shannon will be terminated due to her behavior and misconduct.

52. The Defendant attempted to justify its odd and bizarre reason for terminating the Plaintiff by attempting to pull in an incident from January 14, 2016, in which the Plaintiff was disciplined for reviewing her son's medical records.

53. This Counseling and Corrective Action form was unsigned by the Defendant's Supervisor, the Department Director, or Human Resources.

54. This unsigned Counseling and Corrective Action attached a copy of the "Sexual and Other Workplace Harassment Policy".

55. The policy provides that a violation could result in a "corrective and/or disciplinary action" up termination. p. 2, ¶5.

56. Therefore, termination was the most severe form of discipline under the policy.

## LEGAL CLAIMS

### First cause of Action
### VIOLATION OF THE ADA

57. The Plaintiff restates and re-alleges the factual averments made in paragraphs numbers 1 through, and including, 56 as though set forth herein in full.

58. Section 102(b)(4) of the ADA (codified at 42 U.S.C. § 12112(b)(4)) prohibits discrimination by employers against qualified employees on the basis that they have an association or relationship with individuals who have a disability.

59. The Plaintiff had an association or relationship with an individual with a disability as a result of the Plaintiff's son's diagnosis with HIV.

60. Being diagnosed with HIV/AIDS is as a qualified disability under the ADA.

61. The Defendant knew that Plaintiff had an association or relationship with an individual with a disability.

62. The Defendant engaged in numerous actions that constitute an adverse employment action against the Plaintiff including: (a) terminating the Plaintiff; (b) suspending the Plaintiff; (c) initiating an investigation of the Plaintiff; (d) falsely accusing the Plaintiff of engaging in immoral and outrageous conduct; (e) creating or permitting a hostile and discriminatory work environment by ostracizing the Plaintiff;

and (f) electing the severest form of punishment under the policy for allegations which did not occur and did not warrant termination.

63. The Defendant failed to adequately investigate the false and outrageous allegations against the Plaintiff.

64. As a result of the Defendant's breach, the Plaintiff has incurred damages.

## Second Cause of Action
## VIOLATION OF THE KENTUCKY CIVIL RIGHTS ACT

65. The Plaintiff restates and re-alleges the factual averments made in paragraphs numbers 1 through, and including, 64 as though set forth herein in full.

66. The Kentucky Civil Rights Act (KCRA), codified at KRS 344.010 *et seq.*, prohibits discrimination in employment on the basis of disability, and Kentucky law interprets disability discrimination claims under KRS 344.040 consonant with the ADA.

67. As a result of the Defendant's breach, the Plaintiff has incurred damages.

## Third Cause of Action
## WRONGFUL TERMINATION - COMMON LAW

68. The Plaintiff restates and re-alleges the factual averments made in paragraphs numbers 1 through, and including, 67 as though set forth herein in full.

69. Pursuant to Kentucky common law, employees have a cause of action for a wrongful discharge when the discharge is contrary to a fundamental and well-defined public policy as evidenced by existing law.

70. Under federal and Kentucky law, it is a fundamental and well-defined public policy that an employer shall not terminate an employee because of the employee's association or relationship with an individual with a disability.

71. Defendant violated this fundamental and well-defined public policy by terminating the Plaintiff.

72. Defendant wrongfully terminated Plaintiff, and Plaintiff has sustained damages.

WHEREFORE, the Plaintiff, Shannon Tuttle, prays for judgment, against the Defendant, Baptist Health Medical Group, Inc. d/b/a Baptist Health Pulmonary & Critical Care, as follows:

A. A finding that the Defendant, Baptist Health Medical Group, Inc. d/b/a Baptist Health Pulmonary & Critical Care, violated the Americans with Disabilities Act of 1990, the Kentucky Civil Rights Act, and Kentucky common law as a result of the adverse employment actions against the Plaintiff.

B. A judgment in favor of the Plaintiff, Shannon Tuttle, against the Defendant, Baptist Health Medical Group, Inc. d/b/a Baptist Health Pulmonary & Critical Care, for all damages, including, but not limited to all compensatory damages, including general and special damages, and all incidental damages arising from her suspension and termination of employment in violation of the ADA, the KCRA, and Kentucky common law.

C. A judgment in favor of the Plaintiff, Shannon Tuttle, against the Defendant, Baptist Health Medical Group, Inc. d/b/a Baptist Health Pulmonary & Critical Care, for all statutory damages permitted for violations of the ADA pursuant to 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(g) and the KCRA pursuant to KRS 344.450.

D. Pre-judgment interest.

E. Punitive damages.

F. An award in favor of the Plaintiff against the Defendant for all costs and attorneys' fees, including investigation and expert costs, including such attorneys' fees and costs as are allowed pursuant to 42 U.S.C. § 12117(a) and 42 U.S.C. § 2000e-5(k) for violations of the ADA and pursuant to KRS 344.450 for violations of the KCRA.

G. Any and all such other relief as the Court deems just and proper.

## JURY TRIAL DEMAND

The Plaintiff herein demands a trial by jury.

Respectfully submitted,

/s/Nick Wallingford
Nick Wallingford
Rachel Shelton
**WALLINGFORD LAW, PSC**
1050 Monarch Street, Suite 100
Lexington, Kentucky 40513
Telephone: (859) 219-0066
COUNSEL FOR PLAINTIFF